## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GEORGE WITCHER,                    )
                                   )
                Plaintiff,         )
                                   )
        v.                         )        C.A. No. 05-205 (SLR)
                                   )
SODEXHO, INC.,                     )
                                   )
                Defendant.         )

## DEFENDANT SODEXHO, INC.'S OPENING BRIEF
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

POTTER ANDERSON & CORROON LLP
Jennifer Gimler Brady (I.D.# 2874)
Sarah E. DiLuzio (I.D. #4085)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000 - Telephone
jbrady@potteranderson.com
sdiluzio@potteranderson.com

*Attorneys for Defendant Sodexho, Inc.*

Dated: March 14, 2006
718908

**TABLE OF CONTENTS**

**PAGES**

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES .................................................................................... ii

NATURE AND STAGE OF PROCEEDINGS ........................................................ 1

SUMMARY OF ARGUMENTS .............................................................................. 3

INTRODUCTION .................................................................................................... 4

STATEMENT OF FACTS ....................................................................................... 5

ARGUMENT ......................................................................................................... 18

I.      SUMMARY JUDGMENT IS APPROPRIATE BECAUSE
        PLAINTIFF CANNOT DEMONSTRATE ANY
        MATERIAL ISSUES OF FACT AND DEFENDANT IS
        ENTITLED TO JUDGMENT AS A MATTER OF LAW ......................... 18

        A.    General Summary Judgment Standards ...................................... 18

        B.    Summary Judgment in Employment Discrimination
              Cases ............................................................................................ 19

II.     PLAINTIFF WAS NOT SUBJECT TO DISPARATE
        TREATMENT BASED ON AGE .............................................................. 20

        A.    Plaintiff Can Point to No Direct Evidence of Discrimination ..... 21

        B.    Plaintiff Cannot Establish a Prima Facie Case of Discrimination ..... 23

III.    PLAINTIFF SUFFERED NO ADVERSE EMPLOYMENT ACTION ..... 26

IV.     PLAINTIFF WAS NOT SUBJECT TO A HOSTILE WORK ENVIRONMENT ..... 27

V.      PLAINTIFF SUFFERED NO RETALIATION ........................................ 29

CONCLUSION ...................................................................................................... 31

# TABLE OF AUTHORITIES

*Aman v. Cort Furniture,*
   85 F.3d 1074 (3d. Cir. 1996)....................................................................................28, 29

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986).....................................................................................................18

*Baldwin County Welcome Center v. Brown,*
   466 U.S. 147 (1984).....................................................................................................26

*Barber v. CSX Distrib. Servs.,*
   68 F.3d 694 (3d Cir. 1995)...........................................................................................29

*Birkbeck v. Marvel Lighting Corp.,*
   30 F.3d 507 (4th Cir. 1994) .........................................................................................22

*Boykins v. Lucent Technologies, Inc.,*
   78 F. Supp.2d 402 (E.D. Pa. 2000); *aff'd without op.,* 29 Fed.
   Appdx. 100 (2002).......................................................................................................25

*Burlington Indus., Inc. v. Ellerth,*
   524 U.S. 742 (1998).....................................................................................................27

*Celotex Corp v. Catrett,*
   477 U.S. 317 (1986)...............................................................................................18, 19

*Davis v. City of Phila. Water Dep't,*
   57 Fed. Appx. 90 (3d Cir. 2003)..................................................................................25

*EEOC v. Clay Printing Co.,*
   955 F.2d 936 (4th Cir. 1992) .......................................................................................22

*Ezold v. Wolf, Block, Schorr & Solis-Cohen,*
   983 F.2d 509 (3d Cir. 1992)........................................................................................28

*Faragher v. City of Boca Raton,*
   524 U.S. 775 (1998).....................................................................................................28

*Fuentes v. Perskie,*
   32 F.3d 759 (3d Cir. 1994)..........................................................................................20

*Glanzman v. Metro. Management Co.,*
   391 F.3d 506 (3d Cir. 2004)........................................................................................28

*Hankins v. Temple Univ.,*
   829 F.2d 437 (3d Cir. 1987) ................................................................................. 19

*Jones v. Hosp. of Univ. of Pa.,*
   2004 U.S. Dist. LEXIS 15711
   (E.D. Pa. Aug. 6, 2004) ..................................................................................... 25

*Kershaw v. Aspin,*
   1994 U.S. Dist. LEXIS 17092 (E.D. Pa. Dec. 5, 1994) ..................................... 25

*Krouse v. American Sterilizer, Co.,*
   126 F.3d 494 (3d Cir. 1997) ................................................................................. 30

*Johnson v. Olin Corp.,*
   2000 U.S. Dist. LEXIS 14469 (S.D. Ind. Sept. 29, 2000) ................................. 26

*Jones. v. School District of Philadelphia,*
   198 F.3d 403 (3d Cir. 1999) ................................................................................. 20

*Lampkin v. Cohen,*
   2000 U.S. Dist. LEXIS 14998 (E.D. Pa. Oct. 12, 2000),
   *aff'd without op.*, 33 Fed. Appx. (3d Cir. 2002) ............................................... 21

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973) .............................................................................. 20, 23, 24

*Mondzelewski v. Pathmark Stores, Inc.,*
   162 F.3d 778 (3d Cir. 1998) ......................................................................... 29, 30

*Morrissey v. Luzerne County Cmty. College,*
   117 Fed. Appx. 809 (3d Cir. 2004) ..................................................................... 31

*Pastore v. Bell Tel. Co.,*
   24 F.3d 508 (3d Cir. 1994) ................................................................................. 21

*Petr v. Delaware Air Nat'l Guard,*
   1995 U.S. Dist. LEXIS 14484 (D. Del. Sept. 28, 1995) ..................................... 18

*Price Waterhouse v. Hopkins,*
   490 U.S. 228 (1989) ............................................................................................. 28

*Reeves v. Sanderson Plumbing Prods., Inc.,*
   530 U.S. 133 (D. Del. 2000) ......................................................................... 19, 23

*Revis v. Slocomb Indus., Inc.,*
     814 F.Supp. 1209 (D. Del. 1993) ................................................................... 19

*Sarullo v. U.S. Postal Service,*
     352 F.3d 789 (3d Cir. 2003) ................................................................. 21, 23

*Seabrook v. Gadow,*
     2003 U.S. Dist. LEXIS 10096,
     (D. Del. June 10, 2003) ............................................................................. 27

*Stinson v. Delaware River Port Auth.,*
     935 F.Supp. 531 (D.N.J. 1996),
     *aff'd without op.,* 124 F.3d 188 (3d Cir. 1997) ......................................... 19

*Simpson v. Kay Jewelers,*
     142 F.3d 639 (3d Cir. 1998) ....................................................................... 19

*St. Mary's Honor Center v. Hicks,*
     509 U.S. 502 (1993) .................................................................................. 20

*Texas Department of Community Affairs v. Burdine,*
     450 U.S. 248 (1981) .................................................................................. 20

*Weirs v. Barnes,*
     925 F. Supp. 1079 (D. Del. 1996) .............................................................. 18

*Weston v. Philadelphia Elec. Co.,*
     45 F.3d 744 (3d Cir. 1995) ........................................................................ 27

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(c) ........................................................................................ *passim*

Age Discrimination in Employment Act, 29 U.S.C. Section 621
     *et seq.* ...................................................................................................... *passim*

29 U.S.C. § 623(a)(1) ...................................................................................... 26

## NATURE AND STAGE OF PROCEEDINGS

This is an employment discrimination case brought by *pro se* Plaintiff George Witcher ("Plaintiff") against his former employer, Sodexho, Inc. ("Sodexho"). Plaintiff worked for Sodexho as a food preparation and delivery driver from April 7, 2003 through his voluntary resignation on July 8, 2005.

Plaintiff filed his Complaint against Sodexho on April 8, 2005, claiming that he was discriminated against in violation of the Age Discrimination in Employment Act ("ADEA"). (D.I. 2) Plaintiff filed amendments to his Complaint on April 25 and April 28, 2005. (D.I. 3, 4) Plaintiff's original complaint alleged only that he experienced mechanical problems with his delivery van. The subsequent amendments added allegations that he was subjected to unfair discipline and improper comments about his age. Plaintiff claims that he suffered discrimination when he was subjected to discipline and when he was subjected to working in a hostile environment. Sodexho timely filed its Answer to the Amended Complaint on July 1, 2005, denying all of Plaintiff's claims and asserting a number of defenses to them. (D.I. 8) Pursuant to the Amended Scheduling Order, discovery was to be completed by February 14, 2006. (D.I. 18) During the discovery period, Sodexho propounded interrogatories and requests for the production of documents and Plaintiff's deposition was taken. (D.I. 14, 22, 23) Plaintiff did not initiate any written discovery, nor did he take any depositions.

On March 7, 2006, Plaintiff filed a document titled "Plaintiff's Response to The Summary Judgment" (hereafter "Plaintiff's Motion for Summary Judgment"). (D.I. 41) Sodexho will treat this document as a motion for summary judgment, and will respond in accordance with the Delaware Local Rules. Sodexho now moves the Court to enter

summary judgment in its favor on all of Plaintiff's claims and submits this Opening Brief

in support of its motion.

## SUMMARY OF ARGUMENTS

I.      Sodexho Is Entitled To Judgment As A Matter Of Law Because Plaintiff Has Failed To Establish A Genuine Issue Of Material Fact And Cannot Support All The Elements Of His Claims.

II.     Sodexho Is Entitled To Summary Judgment On Plaintiff's Disparate Treatment Claim Under the ADEA Because: (1) Plaintiff Cannot Establish His Prima Facie Case; (2) Sodexho Acted With Legitimate, Non-Discriminatory Reasons; And (3) There Is No Evidence Of Pretext.

III.    Sodexho Is Entitled To Summary Judgment Because Plaintiff Suffered No Adverse Employment Action.

IV.     Sodexho Is Entitled To Summary Judgment Because Plaintiff Was Not Subjected To A Hostile Work Environment.

V.      Sodexho Is Entitled To Summary Judgment Because Plaintiff Suffered No Retaliation.

## INTRODUCTION

Plaintiff has not even attempted to satisfy his burden of establishing a prima facie case. The discovery period has closed in this case (after having been generously extended by the Court) and yet Plaintiff can point to no evidence, save his own, self-serving statements, that he was subject to age discrimination while an employee of Sodexho. First, Plaintiff does not allege (because he cannot) that he suffered any adverse employment action as a result of the perceived discriminatory acts of which he complains. Indeed, Plaintiff freely admits that he voluntarily resigned from his employment with Sodexho. Sodexho invited Plaintiff to reconsider his resignation, but he refused to even respond to that offer. During his 2 years of employment, Plaintiff's salary, benefits, schedule, and job duties were never decreased. In fact, Plaintiff received 2 salary increases during his tenure. Second, the only discriminatory acts that Plaintiff complains of are 2 isolated comments made during the course of his 2 years of employment that reference his being "old" or "older." Such sporadic and benign comments are not "pervasive and regular" and thus cannot form the basis of a hostile work environment claim. As to the other "abuses" Plaintiff claims to have suffered while an employee of Sodexho, none bear any obvious relation to his age. Moreover, Plaintiff has offered no true comparators that were treated differently under the same circumstances. In short, Plaintiff has completely failed to produce any credible evidence in support of his claim that he was subject to age discrimination while an employee of Sodexho.

## STATEMENT OF FACTS

Based upon the undisputed facts, as spelled out in Plaintiff's own deposition testimony[1], this case is now ripe for disposition on summary judgment.

Sodexho is the largest provider of outsourced food and facilities management in North America. It provides food services for thousands of corporate entities, including many in the State of Delaware. Plaintiff was hired by Sodexho on April 7, 2003 as a food preparation and delivery driver. (Witcher Deposition Transcript dated January 12, 2006, A5-6, Tr. 12, 15[2]) At the time he was hired by Sodexho, Plaintiff was 58 years old. (Complaint, D.I. 2) Plaintiff's position required him to report to a designated client site managed by Sodexho, prepare food according to a predetermined menu, deliver that food to 2 New Castle County libraries, and return to the site to help the kitchen staff and complete his shift. (A5-6, Tr. 13-14) Plaintiff's scheduled shift was 6:00 a.m. to 2:00 p.m. Monday through Friday. (A5, Tr. 13) Plaintiff's position was somewhat unique in that he was largely autonomous and his daily tasks, which he described as "routine," were accomplished with little supervision. (A9, Tr. 27)

Plaintiff was hired by Juanita Congo, the General Manager of the "Library Account," whose responsibility was to oversee the food service and facilities management of the Newark Library and the Brandywine Hundred Library. (A6, Tr. 16) The position of General Manager was later assumed by Carol Sexton. (A10, Tr. 30) When Plaintiff's employment began, he was assigned to a site owned by E. I. du Pont de

---

[1] Sodexho assumes Plaintiff's testimony as true for purposes of this Motion only.

[2] Pertinent documentary evidence and Plaintiff's deposition transcript are included in Defendant's Appendix to its Opening Brief in Support of its Motion for Summary Judgment, referred to herein as ("A__"), and filed contemporaneously herewith.

Nemours and Company ("DuPont") at Barley Mill Plaza. (A5, Tr.12) In June of 2004, Plaintiff was transferred to another DuPont site, located at Chestnut Run Plaza, but his duties remained the same – to prepare food and deliver it to the 2 libraries. (A3, Tr. 204-205) During the 2 years Plaintiff worked for Sodexho, he received 2 merit increases. *(Id.)* Although Plaintiff did exhibit some discipline problems during his tenure, he was generally viewed by Sodexho as a good employee. (A92) Nonetheless, on July 8, 2005, Plaintiff voluntarily resigned from his employment with Sodexho. (A96) Sodexho wrote to Plaintiff soon thereafter and asked him to reconsider his resignation. (A97) Plaintiff did not respond to that request.

Plaintiff's Allegations of Discrimination

The Gary Roger's Comment

During his deposition, Plaintiff alleged three incidents in support of his claim that he suffered discrimination in violation of the ADEA. (A4-5, Tr. 7-10) The first incident occurred in October of 2003 when Gary Rogers, Plaintiff's supervisor at the time, made reference to Plaintiff's age during the course of a conversation. Mr. Rogers had only been Plaintiff's supervisor for 3-4 months at the time of this incident and went out on a medical leave of absence shortly thereafter. (A5-6, Tr. 12, 15) Mr. Rogers did not set or control the terms of Plaintiff's employment; he did not set Plaintiff's schedule or his salary, nor was he Plaintiff's manager long enough to conduct a performance evaluation. (A7, Tr. 18) Mr. Rogers' office was located in the Brandywine Hundred Library so Plaintiff would only see him when he made his daily delivery there. (A6, Tr. 14, 17)

Plaintiff's complaint arises from a conversation he and Mr. Rogers had in early October 2003, during which Mr. Rogers called Plaintiff into his office at the library and,

6

during the course of the conversation, said to Plaintiff "you're the oldest person in the kitchen area." (A7, Tr. 19)  Plaintiff believed that Mr. Rogers was referring to a disturbance that had occurred a couple days earlier among some other, younger employees in the kitchen area at Barley Mill Plaza, suggesting that Plaintiff's age and maturity meant he could, and should, influence other employees to behave better. *(Id.)* Plaintiff retorted to Mr. Rogers' comment by saying he was not, in fact, the oldest person in the kitchen and Mr. Rogers said "well you are older than all of us as far as the library is concerned." (A16, Tr. 56)  Plaintiff was offended by this reference to his age and asked "what does my age have to do with anything?" (A7, Tr. 19-20)  Mr. Rogers responded "well, you're old enough to know better." (Id., Trs. 21)  According to Plaintiff, this conversation with Mr. Rogers lasted 15-20 minutes, during which Mr. Rogers referred to Plaintiff's age 4-7 times. (A7, 10, Tr. 20, 33)  Plaintiff's only recollection of the remaining statements was that Mr. Rogers made general reference to Plaintiff being "older." (A16, Tr. 55-57)  Once Plaintiff informed Mr. Rogers that he was offended by these references to his age, the conversation ended. (A10, Tr. 32)

Upon returning to the Barley Mill kitchen following the conversation with Mr. Rogers, Plaintiff complained about Mr. Rogers' comments and Sodexho took prompt, remedial action. Plaintiff initially complained to the kitchen manager, Mark Teoli, who forwarded Plaintiff's complaint to the General Manager (and Mr. Rogers' supervisor), Juanita Congo. (A8, Tr. 22-23)  Ms. Congo met with Plaintiff within 2 weeks to discuss Plaintiff's complaint. (Id., Tr. 24)  Ms. Congo then advised Plaintiff that she would speak with Mr. Rogers and that Plaintiff could expect to receive an apology from him. (A9, Tr. 26)  Ms. Congo counseled Mr. Rogers, advising him that his comments were

inappropriate and violative of Sodexho's policies. (A72-73) Ms. Congo also directed Mr. Rogers to apologize to Plaintiff. *(Id)* Unfortunately, Mr. Rogers then went out unexpectedly on medical leave before he had an opportunity to apologize to Plaintiff. (A17, Tr. 59) Plaintiff never had any further contact with Mr. Rogers. *(Id)* However, Mr. Rogers was disciplined in connection with this incident as his comments violated Sodexho's anti-discrimination policy. (A71-74)

No further action resulted from this conversation between Plaintiff and Mr. Rogers and Plaintiff suffered no harm. Indeed, Plaintiff admitted that he experienced no adverse action as a result of this conversation. (A17, Tr. 59)

Prior to Plaintiff's Motion for Summary Judgment, Plaintiff never characterized this conversation as "violent." Indeed, there is no evidence to suggest any violence erupted. Plaintiff testified at his deposition that he told Mr. Rogers he was offended by his age-related comments and then the conversation ended and he walked away. Plaintiff even testified that he saw Mr. Rogers the very next day without incident. (A17, Tr. 58-59) Mr. Rogers' statement regarding the incident recounts that once Plaintiff said he was offended, Mr. Rogers apologized and that was the end of the conversation. (A70) Plaintiff's new characterization of this incident as violent, then, can only be viewed as post-hoc posturing.

The Mark Teoli Comment

The second incident identified by Plaintiff as supporting his ADEA claim is another age-related comment made during the course of an otherwise proper conversation. In March of 2004, Mark Teoli and Chad Street, the managers of the kitchen at Barley Mill Plaza, called Plaintiff into the office to discuss with him the need

8

to establish a position description for his job. (A12, Tr. 38)  During this conversation, Mr. Street said that Plaintiff seemed to be taking too long to make his deliveries to the 2 libraries.  Plaintiff responded by saying that he is not a fast driver and his "eyesight is not what it used to be." (A13, Tr. 44)  Plaintiff further explained that he is a more cautious driver now but that "when I was younger . . . caution wasn't a factor." *(Id.)*  In response to Plaintiff's professed limitations, Mr. Teoli asked him "[w]ell, are you just too old for the job?" (A14, Tr. 46)  Plaintiff answered that, no, he did not feel he was too old for the job. *(Id.)*  Shortly after this exchange the conversation ended. (A16, Tr. 47)

Plaintiff did not tell Mr. Teoli or Mr. Street that he found his question offensive, nor did he complain as he had before to other management or human resources. (A14, Tr. 48)  Indeed, at the time, Plaintiff did not feel that this comment warranted a complaint. (A14, Tr. 49)  Plaintiff further testified that never before this incident, or after, did either Mr. Teoli or Mr. Street make any comments about his age. *(Id.)*  In any event, Plaintiff did not consider either Mr. Teoli or Mr. Street to be his supervisor or to have any control over his work. (A11, Tr. 36)  As with the comments made by Mr. Rogers, Plaintiff admitted that he suffered no adverse action as a result of the comment made by Mr. Teoli. (A15, Tr. 50)

The June 10 Incident

The third incident identified by Plaintiff as supportive of his ADEA claim involved his being disciplined for the use of vulgar language while working in the Barley Mill kitchen on June 10, 2004.  Plaintiff was at the Barley Mill kitchen preparing food for the day's deliveries and he was "frustrated" about something so he was "cussing" while talking to a co-worker, John Lewis. (A17, Tr. 60)  The specific curse words used by

Plaintiff during this conversation were "damn," "shit," "bitch," and "the 'F' word."
(A19, Tr. 66)  Also present in the kitchen at the time was another co-worker, Ursula
Knight (referred to by Plaintiff as "Erica") and the supervisor on duty, Donna Haughney.
(A18, Tr. 62)  At some point that morning a call came into the kitchen from a Sodexho
employee located at one of the libraries, named Michelle.  Overhearing the call, Plaintiff
yelled out "I don't know why the bitch couldn't have called me." (A19, Tr. 66)  Ms.
Haughney then told Plaintiff to stop cussing.  (A17, Tr. 60)  Plaintiff responded by saying
"everybody else cuss in the kitchen.  You don't say nothing to them. (*sic*)  So why are
you singling me out?" *(Id.)*  Ms. Haughney simply repeated her direction to Plaintiff to
"stop cussing." *(Id.)*  Plaintiff then accused Ms. Haughney of being "prejudiced." *(Id.)*

At that point, Ms. Haughney asked Plaintiff to wait in the office while she found
the manager, Mr. Teoli.  (A21, Tr. 77)  Plaintiff testified that he waited in the office for
15-20 minutes, but no one else came in so he went back to the kitchen to finish preparing
the food he was working on.  (A22, Tr. 78)  While in the kitchen area, Plaintiff was
involved in another verbal confrontation with a co-worker named Vanessa.  (A29, Tr.
106-108)  Plaintiff testified that Vanessa came into the kitchen and asked what was going
on, to which Plaintiff replied "It's none of your business."  (A29, Tr. 107)  Plaintiff
claims Vanessa addressed him in a "confrontational manner." *(Id.)*  According to all of
the other witnesses, however, Plaintiff initiated the confrontation by asking Vanessa
"What are you looking at?"  (Exhibits A-C to the Certification Of Patty Weick)[3]
Although Plaintiff denies that he was angry or loud or threatening in any way, Vanessa

---

3  The Certification Of Patty Weick In Support Of Sodexho's Motion For Summary
Judgment is filed contemporaneously herewith, and referred to herein as ("Weick
Certification ¶__").

and Ms. Haugney both complained to Mr. Teoli and Mr. Pisano that they felt threatened by Plaintiff that morning due to his abusive language and confrontational attitude. *(Id.)*

Eventually, Ms. Haughney returned to the office area with 2 managers, Mr. Teoli and Mark Pisano. After speaking with Ms. Haughney and Vanessa, Mr. Teoli and Mr. Pisano asked Plaintiff into the office. (A22, Tr. 79) Mr. Teoli and Mr. Pisano asked Plaintiff if he had been cussing in the kitchen. (A22, Tr. 80) Plaintiff admitted that he had, saying "everybody cusses. What's the big deal?" (A22, Tr. 81) Mr. Teoli then informed Plaintiff he was being suspended, with pay, while the investigation into his behavior that morning was completed. *(Id.)* Plaintiff indicated that he did not feel an investigation was warranted. *(Id.)*

The decision was nonetheless made to suspend Plaintiff pending investigation. Pursuant to DuPont policy (Sodexho was managing a DuPont-owned site at Barley Mill), security was called to escort Plaintiff out of the building. (A23, Tr. 83) Mr. Teoli asked Plaintiff to have a seat in the office while they waited for security to arrive. *(Id.)* They waited for anywhere from 5-10 minutes for security to arrive, during which time Plaintiff was seated in the office with Mr. Teoli and Mr. Pisano. (A23-24, Tr. 83-84, 88) At no time did anyone tell Plaintiff he could not leave the room, nor was he physically restrained in any way. (A23, Tr. 84) Nonetheless, Plaintiff alleges that he was unlawfully imprisoned. (A37, Tr. 138) This allegation comes despite the fact that the office had walls of windows on both sides and numerous people were visible from within it, the office door was not locked, and there was a phone in the room. (A23-25, 36, Tr. 84-85, 89-90, 135-137) In any event, security arrived and Plaintiff was escorted out of the building. (A26, Tr. 95-96)

11

Plaintiff was suspended, with pay, for a total of 1 week while Sodexho investigated the events of June 10. (A26, Tr. 97) Before returning to work, Plaintiff attended a meeting on June 17, 2004 with Carol Sexton (the General Manager), Lew Delfierro (the Regional Manager), Joanne Dunn-Vanaman (General Manager of the Chestnut Run facility), and John Lewis (a co-worker). (A85) At that meeting, Ms. Sexton read the statements provided by John, Donna and Vanessa indicating that Plaintiff had not only used inappropriate language that day but had initiated a confrontation with Vanessa. *(Id.)* Ms. Sexton also explained to Plaintiff that vulgar language is unacceptable in the workplace and would not be tolerated, from any employee. Finally, Plaintiff was advised that his complaint of prejudice against Ms. Haughney would be investigated because it was important to Sodexho that all employees be treated fairly. *(Id.)*

Following the meeting, Plaintiff returned to work the next day. (A28, Tr. 102) However, due to the friction between Ms. Haughney, Vanessa, and Plaintiff, management suggested that Plaintiff transfer to the Chestnut Run facility. After some hesitation, Plaintiff agreed to the transfer. (A28, Tr. 104) Plaintiff's salary remained the same as did his job duties and responsibilities – to prepare food and deliver it to the 2 libraries. (A28, Tr. 105) The only thing that changed was the location that Plaintiff prepared the food, and the 2 locations were within a few miles of each other. *(Id.)*

In response to Plaintiff's complaint, Sodexho conducted an investigation into the claim that Ms. Haughney was prejudiced, or treated employees unfairly. Ms. Patty Weick, the Senior Human Resources Manager, wrote to Plaintiff on July 7, 2004 summarizing the results of her investigation. (A86-88) Ms. Weick interviewed seven other employees and four managers. No one corroborated Plaintiff's claims. *(Id.)*

Nonetheless, Ms. Haughney did receive a constructive counseling notice reminding her of Sodexho's policies and the importance of consistent and fair treatment of employees. (A89)

The Focaccia Bread Incident

At his deposition, Plaintiff identified these 3 incidents as the "whole universe" of incidents that support his age discrimination claim. (A4-5, Tr. 8-11) These are also the 3 incidents identified in Plaintiff's Motion for Summary Judgment in support of his ADEA claims. Because Plaintiff's Complaint and Amendments to the Complaint raised other incidents, however, Sodexho elicited testimony from Plaintiff regarding those allegations.

On June 9, 2004, Plaintiff was in the kitchen preparing food and he opened a fresh loaf of focaccia bread to make sandwiches, rather than using the older (but still fresh) bread that was already opened. (A37, Tr. 141) Ms. Haughney witnessed this and instructed Plaintiff to use the older bread first, before opening a new loaf. *(Id.)* It was standard operating procedure for older products to be used before newer products were opened. *(Id.)* Plaintiff claims that, while it may have been standard operating procedure, Ms. Haughney did not enforce the procedure with other employees. *(Id.)* Plaintiff, however, was only in the kitchen a few hours every morning, before his deliveries, so he admitted that he does not know whether Ms. Haughney reprimanded others about this rule when he was not there. (A38, Tr. 145) Moreover, this allegation was among those investigated by Human Resources in June 2004, and the other employees interviewed stated that Ms. Haughney did in fact instruct them to use older products first because it was standard operating procedure.

Alleged Mechanical Problems with Delivery Truck

In or around February 9, 2005, Plaintiff noticed the "check engine" light came on in the van he drove every day to make his deliveries. (A39, Tr. 146) Plaintiff promptly complained to his supervisor about the light and requested that the van be serviced. Sodexho provided the van for Plaintiff's use and was responsible for its maintenance. (A39, Tr. 147) Plaintiff believes that, despite his complaint, the van was not repaired for several weeks. (A39, Tr. 149) Plaintiff cannot, however, be sure that the van was not serviced in that time frame, only that he was not informed it had been. (A41, Tr. 154) Plaintiff further testified that it "wasn't an age factor. As far as I was concerned, that was part of the harassment claims that I made." (A39, Tr. 149) Plaintiff could point to no evidence supporting this belief, he simply alleged that when he complained about the van twice in the past, the repairs had been undertaken more quickly than they were in February 2005. *(Id.)*

The September 2004 Incident

On September 23 and 24, 2004, the cafeteria at the Chestnut Run facility, where Plaintiff was assigned, was closed for renovation. However, Plaintiff was expected to work those 2 days as his job entailed making food for delivery to other sites, rather than servicing the cafeteria at Chestnut Run. (A44, Tr. 166-167) Other employees, whose job it was to service the cafeteria at Chestnut Run, were not expected to report to that site for those 2 days because the cafeteria was closed. *(Id.)* The General Manager of Chestnut Run, Joanne Dunn-Vanaman was, however, present at the site those 2 days. (A45, Tr. 170) Carol Sexton was also present on 1 of the days. (A46, Tr. 176) The kitchen area, where Plaintiff prepared the food he was to deliver, was not under renovation. (A44, Tr.

169)  Plaintiff believed that the kitchen area was "hazardous" because of the nearby construction and complained to Ms. Sexton on September 23. (A44, Tr. 167)  Plaintiff alleges Ms. Sexton completely ignored his complaint. (A46-47, Tr. 177-179)  Plaintiff did not pursue his complaint.  He did not lodge a complaint with Human Resources. (A148, Tr. 183)  He did not call the Business Abuse Hotline number posted in the Sodexho Employee Handbook.  *(Id.)*  He did not even bother to mention his alleged concern about the "hazardous" conditions to Ms. Dunn-Vanaman, though she was present both days and in charge of the site.  *(Id.)*

The February 2005 Incident

On February 25, 2005, Plaintiff received a written constructive counseling notice for having failed to appear for work, without excuse, on Monday, February 21, 2005. (A94)  Plaintiff testified that February 21 had been Presidents Day and he believed he did not have to work that day because it was a holiday. (A49, Tr. 187)  However, no one told Plaintiff he did not have to work that day and, in fact, the libraries were open and expecting Plaintiff to make deliveries that day. (A50, Tr. 192)  The Complaint in this action identifies this incident as an example of retaliation Plaintiff suffered for having filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 8, 2004. (A90-91)  At his deposition, however, Plaintiff could point to no evidence that this counseling notice, which was accurate, was in retaliation for his having filed a Charge of Discrimination seven months earlier.  In fact, when asked whether there were any facts supporting his claim that the counseling notice was retaliatory, Plaintiff replied "No.  It's just my personal belief." (A52, Tr. 201)

Plaintiff's Salary Increase

Finally, Plaintiff alleges that his salary increase for the year 2004 was delayed in retaliation for his having filed a Charge of Discrimination. (D.I. 41)  Plaintiff was eligible for an increase in salary on his 1 year anniversary, in April 2004. (A42, Tr. 158) Due to the repeated changes in Plaintiff's direct supervisor during that time, however, Plaintiff did not receive an increase right away. (A42, Tr. 161)  Indeed, when Ms. Weick was conducting the investigation into Plaintiff's allegations of discrimination in June 2004,  Plaintiff brought up the fact that he had not received a raise and Ms. Weick indicated that she would pass that information along to his management team and ask them to follow-up. (Weick Certification, ¶6)  Unfortunately, however, Plaintiff did not receive his 2004 pay raise until February 2005, at which time he received a 2.5% increase, retroactive to April 2004.  (A42-43, Tr. 160-161, 165)  Shortly thereafter, Plaintiff received his 2005 performance review and another salary increase of  3%. (A92-93)

Sodexho's Policies

Sodexho maintains a strict policy prohibiting harassment or discrimination of any kind.  The Sodexho Employee Handbook, which Plaintiff received, states: "The Promise of Respect and Fair Treatment allows you to express your concerns and obtain guidance from your manager or Human Resources representative if you feel that you have been treated unfairly in some way." (A85-83.1; A84; A20, Tr. 70)  The Handbook then goes on to outline the steps an employee should take to express a complaint or concern, and promises that there will be no discrimination or retaliation against anyone because he or she has lodged a complaint.  *(Id )*  Every complaint Plaintiff brought to Sodexho's

attention was promptly investigated and, if warranted, corrective action was taken. (A8, Tr. 25-26; A29, Tr. 109; A85; A86-87)

The Sodexho Employee Handbook also identified behaviors that could subject an employee to escalating levels of constructive counseling. (A76-80) Behavior that could warrant termination from Sodexho includes, among other things, "Any disorderly conduct, such as profanity or yelling, including the use of vulgar, abusive or obscene language while on Company/client premises or arising out of Company business." (A80) Plaintiff agreed that the curse words he used in the kitchen at Barley Mill on June 10, 2004 amounted to "vulgar, abusive or obscene" language. (A20, Tr. 71) Plaintiff further agreed that the use of such language while at work was a direct violation of Company policy. (A20, Tr. 72) Plaintiff was not terminated for violating this policy, however, and was subject only to a suspension, with pay.

Throughout the 2 years of Plaintiff's employment, his job duties never changed, his salary and benefits were never decreased (in fact, he received 2 salary increases), and his schedule and hours of work remained the same. (Trans. 204-205)

**ARGUMENT**

I.  **SUMMARY JUDGMENT IS APPROPRIATE BECAUSE PLAINTIFF CANNOT DEMONSTRATE ANY MATERIAL ISSUES OF FACT AND DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

  A.  **General Summary Judgment Standards.**

Summary judgment is required where "the pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Wiers v. Barnes*, 925 F. Supp. 1079, 1085 (D. Del. 1996) (citing Fed. R. Civ. P. 56(c)). A dispute regarding a material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Further, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* As this Court has recognized, "the mere existence of <u>some</u> evidence in support of the nonmoving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue." *Petr v. Delaware Air Nat'l Guard*, 1995 U.S. Dist. LEXIS 14484 (D. Del. Sept. 28, 1995) (Ex. A hereto) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986)) (emphasis added). Thus, a defendant is entitled to summary judgment if it can demonstrate a complete failure of proof concerning an essential element of a plaintiff's claim, so as to render all other facts immaterial. *Celotex*, 477 U.S. at 322-23.

**B.**    **Summary Judgment in Employment Discrimination Cases.**

With respect to summary judgment in an employment discrimination case, the Court's role is "to determine whether, upon viewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Revis v. Slocomb Indus., Inc.*, 814 F.Supp. 1209, 1214-15 (D. Del. 1993) (quoting *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987)).

A defendant in an employment discrimination case is entitled to summary judgment if (1) the plaintiff is unable to establish a prima facie case, or (2) the plaintiff established a prima facie case, but cannot produce sufficient evidence of pretext to rebut the employer's legitimate, nondiscriminatory reason for the action. *See Stinson v. Delaware River Port Auth.*, 935 F.Supp. 531, 539 (D.N.J. 1996), *aff'd without op.*, 124 F.3d 188 (3d Cir. 1997); *accord Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (D. Del. 2000). To sufficiently demonstrate that an employer's proffered nondiscriminatory reason is a pretext for discrimination, a plaintiff seeking to avoid summary judgment must point to evidence from which a fact-finder reasonably could (1) disbelieve the employer's articulated reason, or (2) believe that a discriminatory reason was more likely than not a motivating factor in the employer's action. *See Simpson v.*

*Kay Jewelers*, 142 F.3d 639, 644 (3d Cir. 1998) (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

Plaintiff has not adduced even a shred of evidence that Sodexho discriminated against him based on his age. Instead, Plaintiff rests on his "personal belief" that a few, isolated incidents were motivated by discriminatory animus. *See Jones. v. School District of Philadelphia*, 198 F.3d 403, 414 (3d Cir. 1999) (finding unsupported allegations of discrimination predicated on personal beliefs irrelevant). Thus, Sodexho is entitled to summary judgment on Plaintiff's claim under the ADEA.

## II.   PLAINTIFF WAS NOT SUBJECT TO DISPARATE TREATMENT BASED ON AGE

Plaintiff has not proffered any evidence that supports his age discrimination claim.[4] To establish a claim for age discrimination, Plaintiff must show that Sodexho intentionally discriminated against him on the basis of his age. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). To do so, he must demonstrate (1) that Sodexho treated him differently than other similarly situated employees who are younger, <u>and</u> (2) that the reason for the different treatment was unlawful discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff cannot satisfy either element, much less both elements.

---

[4] Plaintiff's Complaint, and 2 Amendments thereto, are somewhat disjointed because they make certain allegations and then incorporate the Charge of Discrimination Plaintiff filed with the EEOC. However, Plaintiff checked the boxes for "Age" and "Retaliation" on his Charge of Discrimination and indicated on the Complaint form that this action was based on "Age" discrimination.

A.    **Plaintiff Can Point to No Direct Evidence of Discrimination.**

Intentional discrimination may be proven in 1 of 2 ways:  (1) through direct evidence that the particular employment decision or action was motivated by the employee's age; or (2) by inference. *Id*  Plaintiff's own assertion of discriminatory animus in and of itself does not give rise to an inference of unlawful discrimination. *See Sarullo v. U.S Postal Service*, 352 F.3d 789, 798 (3d Cir. 2003) (ADEA case) *cert denied* 158 L. Ed. 2d 964 (2004).  Plaintiff was asked repeatedly in his deposition what evidence he has, other than his own beliefs, that he was subjected to discrimination based upon his age, and he offered none. (A21, 38, 39, Tr. 75, 143, 144, 149)  Likewise, in responding to Sodexho's written discovery requests seeking all evidence Plaintiff relies upon to support his claims, Plaintiff offered only his own, self-serving statements. (See Plaintiff's Responses, D. I. 27, 28, 30, 32, 33)

It is well-established that a plaintiff's subjective suspicions that he was discriminated against are insufficient to support a claim of discrimination. *See, e.g., Lampkin v. Cohen*, 2000 U.S. Dist. LEXIS 14998 (E.D. Pa. Oct. 12, 2000) (Ex. B hereto), *aff'd without op*, 33 Fed. Appx. (3d Cir. 2002)  (granting summary judgment to employer where plaintiff's claim was based on his subjective belief of discrimination by management).  Because conclusory allegations are insufficient to defeat summary judgment, and Plaintiff himself admits that he has nothing more than his own subjective beliefs to support his claim, Sodexho is entitled to summary judgment on Plaintiff's claim of discrimination on the basis of age. *See Pastore v. Bell Tel  Co*, 24 F.3d 508, 511 (3d Cir. 1994) (holding that non-moving party may not rely "upon conclusory allegations . . . to establish a genuine issue of material fact.").

The only arguably direct evidence Plaintiff can point to in support of his claim is (1) the comments made by Gary Rogers, and/or (2) the comment made by Mark Teoli. These comments are not sufficient evidence of discrimination to survive summary judgment, however. First of all, in proving discriminatory motive with direct evidence of the employer's statements, the alleged discriminatory statements must directly relate to an employment decision, or pattern of decisionmaking. *See EEOC v. Clay Printing Co.*, 955 F.2d 936, 941 (4th Cir. 1992). Thus, Plaintiff must show a connection between the discriminatory comments and the employer's action. *Id.* at 942 (holding that a "nexus [must] exist[] between the alleged discriminatory statements and any of the employment decisions"). In this case, as will be shown below, Plaintiff suffered no adverse employment action. Even so, neither the comments made by Mr. Rogers referring to the fact that Plaintiff was "older" than the other employees in the area or the single comment made by Mr. Teoli in response to Plaintiff's expressed concerns about the effect of his age on his driving ability carried any consequences for Plaintiff whatsoever.

Furthermore, to be direct evidence of discrimination, a statement must be more than a fact of life that has "no disparaging undertones." *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994). In *Birkbeck*, the employer stated that "there comes a time when we have to make way for younger people." *Id.* at 511. The Fourth Circuit held this statement was not direct evidence of age discrimination because it was merely a fact of life with no disparaging undertones and characterized it as a "non-actionable reflection[s] on generational passage." *Id.* at 512. Thus, "the statement in itself created no inference of age bias" and simply reflected the truth that eventually younger employees will replace the older ones. *Id.* Likewise, in *Holtz v. Jefferson*

*Smurfit Corp.*, the Court found that the statement "you're old enough to retire so you don't have to worry about it" carried no disparaging undertones and was thus non-actionable. 408 F. Supp. 2d 193 (M.D. N.C. 2006). The same is true of Mr. Rogers' comments. Merely observing the fact that Plaintiff was the oldest employee in the area is not disparaging in any way. And Mr. Teoli simply asked the question – "are you just too old for the job?" <u>after</u> Plaintiff confessed that he was more a cautious, slower driver than he was 20 years ago, and that his eyesight is not what it once was. In sum, none of these statements are direct evidence of discrimination.

Thus, in this case, Plaintiff has no direct evidence of discriminatory motive.

### B.   <u>Plaintiff Can Not Establish a Prima Facie Case of Discrimination.</u>

In the absence of direct proof, Plaintiff's claim can survive only if he can prove intentional discrimination by inference, according to the well-established standard set forth in *McDonnell Douglas*. *See Sarullo*, 352 F.3d at 797. Assuming Plaintiff can make a *prima facie* showing, the burden then shifts to Sodexho to proffer a legitimate nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802. This burden is a relatively light one, and is met when Sodexho proffers a lawful reason for its actions. *Burdine*, 450 U.S. at 256-58. Once Sodexho does so, the presumption of discrimination produced by Plaintiff's *prima facie* case disappears. *Id.* The burden then shifts back to Plaintiff to show that Sodexho's purported legitimate business reason is merely a pretext for discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146 (2000); *McDonnell Douglas*, 411 U.S. at 804. At all times, the ultimate burden of persuasion remains with Plaintiff. *Reeves*, 530 U.S. at 146; *Hicks*, 509 U.S. at 506 (1993).

For the reasons stated below, Plaintiff cannot meet his burden of proof in this case. Plaintiff does not have evidence that is sufficient even to establish a *prima facie* case of discrimination, and alternatively, cannot show that Sodexho's explanations of its actions were merely a pretext for age discrimination.

In order to establish a prima facie case, Plaintiff must prove: (1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances supporting an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 800. While Plaintiff is, indeed, over 40 years of age and was qualified for the position he held, he cannot satisfy elements 3 or 4. Accordingly, Plaintiff cannot establish a prima facie case, much less carry the ultimate burden of showing Sodexho's explanations were merely pretextual.

Plaintiff points to an incident in June 2004 in which he was disciplined for using vulgar language in the workplace and engaging in a verbal altercation with a co-worker as evidence of discrimination. Plaintiff claims that he was treated differently than similarly situated, younger employees when he was suspended, with pay, for 1 week pending Sodexho's investigation of the day's events. Plaintiff does not provide any specific comparative information, however. Plaintiff simply alleges that other employees "cussed" in the kitchen area and were not reprimanded. Plaintiff does not identify when this occurred or whether these "other" employees used the same language Plaintiff admitted to using (including "bitch and "f---"), or whether they directed that language at a co-worker, as Plaintiff did, or whether they then got into a verbal confrontation with another co-worker whereby that co-worker felt threatened. (A19, A21, Tr. 66, 74-75)

That is the situation Plaintiff was in that led Sodexho to impose the suspension, with pay, pending investigation.

In order to show disparate treatment, Plaintiff must identify a "similarly situated" employee that was treated differently, or better, than he was treated. In order to be "similarly situated" the individual must "'have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *See Davis v. City of Phila. Water Dep't*, 57 Fed. Appx. 90, 92 (3d Cir. 2003) (citations omitted) (declining to find that comparators were similarly situated where plaintiff previously had been disciplined by a 30-day suspension and warned at that time that further misconduct would result in termination and comparators had not); *see also Jones v. Hosp. of Univ. of Pa.*, 2004 U.S. Dist. LEXIS 15711, (E.D. Pa. Aug. 6, 2004) (Ex. C hereto) (to establish comparators are "similarly situated" plaintiff must demonstrate that she was treated less favorably under <u>identical</u> circumstances) (emphasis supplied). Plaintiff has not identified <u>any</u> employee who was "similarly situated" to him. Plaintiff thus cannot establish his *prima facie* case.

Plaintiff's failure to come forward with sufficient evidence to sustain his burden at this stage of the litigation cannot be excused simply because he is proceeding *pro se*. "Merely because a non-moving party is proceeding *pro se* does not relieve him of the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact." *See Boykins v. Lucent Technologies, Inc.*, 78 F. Supp.2d 402, 408 (E.D. Pa. 2000); *aff'd without op.*, 29 Fed. Appdx. 100 (2002) *Kershaw v. Aspin*, 1994 U.S. Dist. LEXIS 17092 *5-6 (E.D. Pa. Dec. 5, 1994) (Ex. D hereto) ("While a pro se litigant must be afforded a more liberal interpretation of [his] complaint than a represented plaintiff, this

judicial grace does not relieve the pro se plaintiff of the burden of coming forth with some evidence to rebut defense affidavits that refute [his] claims.") (citations omitted); *see also Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984) ("requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of vague sympathy for particular litigants").

## III.     PLAINTIFF SUFFERED NO ADVERSE EMPLOYMENT ACTION

Plaintiff has not alleged any adverse employment action whatsoever. In order to state a claim under the ADEA, Plaintiff must prove that he was discriminated against in hiring, discharge, compensation, term, conditions, or privileges of employment on the basis of age. *See* 29 U.S.C. § 623(a)(1). He was hired by Sodexho, at the age of 58, and he admits to having voluntarily resigned 2 years later. Indeed, Sodexho even invited Plaintiff to reconsider his resignation and return to work, but he refused. During his 2 years of employment, Plaintiff concedes that he never experienced a reduction in salary or benefits, that his schedule and hours of work remained the same and that his duties never changed. On the contrary, Plaintiff received 2 salary increases during his tenure with Sodexho and enjoyed unusual autonomy in his work.

The only possible action Plaintiff could point to is the fact that he was suspended, with pay, for one week in June of 2004 as a discipline measure. Unfair or undeserved reprimands do not qualify as adverse employment actions if they carry no job consequences, however. *See Johnson v. Olin Corp.*, 2000 U.S. Dist. LEXIS 14469 (S.D. Ind. Sept. 29, 2000); *see also Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001) (holding a negative performance evaluation, by itself, is not an adverse employment action). Moreover, "[a] tangible employment action in most cases inflicts direct

economic harm." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-62 (1998). It is undisputed that Plaintif did <u>not</u> suffer any economic harm.

In any event, Plaintiff can point to no evidence that Sodexho's proffered reason for suspending him, that he used vulgar language and engaged in a verbal altercation with a co-worker, was pretext. "Speculation and belief are insufficient to create a fact issue as to pretext. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that he has been discriminated against." *Seabrook v. Gadow*, 2003 U.S. District LEXIS 10096, at *22 (D. Del. June 10, 2003) Ex. F hereto). Indeed, Plaintiff admits to using vulgar language and exchanging harsh words with Vanessa, a co-worker. (A19, A29, Tr. 66, 107) Plaintiff further acknowledged that such behavior is in violation of Sodexho policy and, according to the Company Handbook, he could have been terminated for that behavior. Instead, Plaintiff was merely suspended, with pay. (A75-84) When he returned to work, his salary, benefits, schedule, and duties remained unchanged. Plaintiff thus clearly did not suffer any cognizable adverse employment action and thus fails to state a *prima facie* case.

## IV.   PLAINTIFF WAS NOT SUBJECT TO A HOSTILE WORK ENVIRONMENT

Plaintiff's Complaint generally lists "Harassment" as a cause of action. Assuming that Plaintiff's amorphous allegations are an attempt to allege a claim for employment discrimination due to a hostile work environment, Plaintiff has to establish: (1) that he suffered intentional discrimination because of age; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person of the same age in that position; and (5) the existence of respondent superior liability. *See Aman v. Cort Furniture*, 85 F.3d 1074,

1081 (3d. Cir. 1996), *Weston v. Philadelphia Elec. Co.*, 45 F.3d 744, 753 (3d Cir. 1995). In analyzing a hostile work environment claim, the Court must look at the totality of the circumstances including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the work performance of the employee. *Id.* The Supreme Court has noted, with respect to Title VII, that its purpose is <u>not</u> to punish "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The same is true for the ADEA.

As set forth above, Plaintiff cannot prove that he has suffered intentional discrimination because of his age. Nor can Plaintiff argue that the isolated remarks of Mr. Rogers and Mr. Teoli, uttered nearly a year apart and wholly unconnected to any consequences, amounted to "pervasive and regular" discrimination. *See, e.g., Price Waterhouse v. Hopkins,* 490 U.S. 228, 277 (1989) (O'Connor, J. concurring) ("stray remarks in the work place . . . unrelated to the decisional process itself [cannot] suffice to satisfy plaintiff's burden . . ."); *Glanzman v. Metro. Management Co.*, 391 F.3d 506, 513 (3d Cir. 2004)("statements made by non-decision makers or by a decision maker unrelated to the decisional process itself are *not* direct evidence."); *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992)("Stray remarks by non-decision-makers or by decision-makers unrelated to the decision process are rarely given great weight . . ."). In this case, neither Mr. Rogers nor Mr. Teoli were direct decision makers with regard to the terms and conditions of Plaintiff's employment. Mr. Rogers, in fact, was only Plaintiff's supervisor for 3 or 4 months and did not control Plaintiff's daily

28

work; nor did he ever give Plaintiff a performance review; nor discipline him in any way; nor make any other decision with respect to Plaintiff's employment. (A7, Tr. 18) Mr. Teoli was not even Plaintiff's direct supervisor and thus had no control over the terms of Plaintiff's employment. (A11, Tr. 36)

The additional incidents related in Plaintiff's Complaint, (involving the use of older food products before opening new products, mechanical problems with his delivery truck, a reprimand for missing a scheduled day of work, and being required to report to work although the cafeteria - but not the kitchen - was closed for construction) do not amount to "pervasive and regular" actions. *See Aman*, 85 F.3d at 1081. Each was an isolated incident, often occurring months apart, and none bore any obvious connection to Plaintiff's age. Therefore, Plaintiff has not met his burden of establishing that he was subject to discrimination based on a hostile work environment.

## V.    PLAINTIFF SUFFERED NO RETALIATION

To establish a *prima facie* case of retaliation, a plaintiff must show: (1) that he engaged in protected conduct; (2) that he was subject to an adverse employment action subsequent to such activity; and (3) that a causal link exists between the protected activity and the adverse action. *See Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701 (3d Cir. 1995). Once again, this claim fails because Plaintiff has not come forward with evidence, other than his own subjective beliefs, that he was subjected to any adverse employment action. *See Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778 (3d Cir. 1998) (holding plaintiff must show evidence of adverse employment action to sustain claim of retaliation). Although Plaintiff's filing of a Charge of Discrimination in July 2004 was a

"protected activity," Plaintiff cannot establish the remaining elements of a retaliation claim.

Minor or trivial actions that merely make an employee "unhappy" are not sufficient to qualify as retaliation, "for otherwise every action that an 'irritable, chip-on-the- shoulder employee did not like would form the basis of a discrimination suit.'" *Mondzelewski*, 162 F.3d at 787 (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) ("a retaliation plaintiff must show that he or she suffered a <u>materially</u> adverse employment action") (emphasis supplied)). In support of his retaliation claim, Plaintiff points to three incidents – the fact that his delivery van experienced mechanical problems and Sodexho did not replace it for a few weeks; the fact that he was reprimanded for failing to report to work on a scheduled workday; and the fact that he was required to report to work even though the cafeteria at that location (which he did not serve) was closed. None of these incidents resulted in any "material" change to the terms, conditions or privileges of Plaintiff's employment. The written reprimand carried no further consequences – no decrease in pay, no loss of benefits, no reduced schedule. In fact, Plaintiff's April 2005 performance review resulted in his being given a 3% increase in salary, despite the reprimand.

Furthermore, Plaintiff cannot establish any causal connection between his filing of the Charge of Discrimination and the events about which he complains. The Third Circuit, having recognized the probative value of temporal proximity in retaliation cases, has stated that the timing must be "unusually suggestive" of retaliatory motive before a causal link will be inferred. *Krouse v. American Sterilizer, Co.*, 126 F.3d 494, 503 (3d Cir. 1997). In this case, each of the complained of acts occurred more than seven months

after Plaintiff filed his Charge of Discrimination in July 2004. The first 2 were in February 2005 and the third was in March 2005. The passage of seven months is not "unusually suggestive" of retaliatory motive. *See Morrissey v. Luzerne County Cmty. College*, 117 Fed. Appx. 809, 816 (3d Cir. 2004) (holding that a six month duration between the time plaintiff complained and the time the adverse action occurred was not unusually suggestive of retaliatory motive). Plaintiff has adduced no additional evidence that these events are in any way related to his filing of a Charge of Discrimination.

Finally, the fact that Plaintiff's 2004 wage increase was delayed for several months is not evidence of retaliation for filing an EEOC charge. First of all, there is absolutely no evidence that Plaintiff was entitled to an annual wage increase. Second, Plaintiff did, in fact, receive a wage increase after the first year of his employment of 2.5%. Third, Plaintiff's anniversary date (and the date he would have received his "annual" wage increase) was in April of 2004, three months before he filed a Charge of Discrimination. Fourth, Plaintiff suffered no damage as a result of the delay. The 2.5% wage increase was paid to Plaintiff and made retroactive to his April 2004 anniversary date. Finally, Plaintiff admits that Sodexho's proffered reason for this delay, that Plaintiff experienced several changes in supervision during the first year, is accurate. Because Plaintiff has completely failed to present proof that he was retaliated against or suffered an adverse employment action, Sodexho is entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant Sodexho, Inc. respectfully requests that the Court grant summary judgment in Sodexho's favor.

31

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: _____
    Jennifer Gimler Brady (I.D.# 2874)
    Sarah E. DiLuzio (I.D. #4085)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19801
    (302) 984-6000 - Telephone
    jbrady@potteranderson.com
    sdiluzio@potteranderson.com

Dated: March 14, 2006

*Attorneys for Defendant Sodexho, Inc.*

718908

32